OPINION OF THE COURT
John J. Ark, J.
A trial was held on the sufficiency of the plaintiff’s cruel and inhuman treatment complaint. Plaintiff testified credibly as follows.
*614 The plaintiff wife and defendant husband were married in September 1968. They have two children, born in April 1976 and November 1983.
The defendant has a 12-year history of abusing alcohol. The defendant was convicted of driving while intoxicated (DWI) in 1991 and again in 1992. The plaintiff insisted that the drinking would have to be controlled or it would have a detrimental impact on their marriage. Not only did the defendant ignore the plaintiffs requests, but his drinking increased.
The use and abuse of alcohol by the defendant escalated during 1997. The alcohol abuse embarrassed and undermined defendant’s ability to have a relationship with his older child.
In June 1997, upon returning home from work one evening, the defendant was so inebriated he stepped off the bus (his driving privileges still revoked from the second DWI conviction), fell and hit his head on the curb. The local volunteer ambulance rushed him to the hospital. The plaintiff was disgusted and embarrassed.to pick up her husband from the hospital because he was too drunk to get off a bus safely. She told the defendant that this was an embarrassment to her and to their older child whose friends served on the ambulance corps. She again told the defendant that this conduct would not be tolerated and that his drinking would have to stop. Defendant once again ignored her request.
The defendant’s drinking has become so excessive that he does not know what he does during the night. Plaintiffs sleep is often disrupted because she has heard him “banging around” in the bottom half of the house necessitating her to go downstairs and check on the defendant to see if he was doing damage to the house or himself.
Defendant’s pattern is to drink during the work week lunch hour and, on occasion, throughout the afternoon. He then proceeds home where he passes out and upon wakening, begins drinking again.
In 1998 and 1999 it became apparent that defendant was borrowing $1,500 to $2,000 per month against his credit card to buy alcohol and tickets for a game of chance known as Quick Draw. In one week in December 1998, he spent over $380 on Quick Draw tickets. This has caused the plaintiff anxiety about their ability to pay the large amount of debt being created by the defendant.
The older child testified as to being embarrassed by the defendant father and disgusted by his eating habits, his dress and *615 his failure to maintain privacy when using the bathroom. The child did not like to have friends visit, and did not enjoy the defendant’s company, or being anywhere near the defendant. The child severed any relationship with the defendant father in June 1997.
The parties’ younger child has confronted the father about his drinking, and the defendant father has disregarded any remark that he should not be drinking.
Defendant admitted that plaintiff has repeatedly demanded that he stop drinking; that he had a very poor relationship with his older child; that after the DWI convictions the plaintiff insisted that the drinking would have to be controlled or it would have a detrimental impact on their marriage; that he left the marital bedroom of his own accord seven years ago; and that he has not had a sexual relationship with the plaintiff since.
As a result of these events, plaintiff became clinically depressed. Plaintiff’s physician since 1990 testified that in August 1996 the plaintiff presented with anxiety, heart palpitations, headaches and stress which he believed resulted from the plaintiff’s troubled marriage to the defendant caused by his alcohol abuse. By August 1998, plaintiff’s weight loss, crying and despondency resulted in her again seeking medical attention with her physician. On August 28, 1998, he diagnosed her as suffering from clinical depression. The plaintiff presented with increased frequency of migraine headaches, weight loss, sleeping problems, anxiety and crying. Plaintiff’s physician placed her on an antidepressant, Zoloft.
Although there is precedent in a short-term marriage that compulsive gambling and its deleterious impact upon the parties’ relationship along with certain other committed acts constitutes cruel and inhuman treatment (see, Reiss v Reiss, 170 AD2d 589), there is no precedent as to whether continuous alcohol abuse alone does. In Blaise v Blaise (206 AD2d 715), a divorce was granted where the plaintiff wife proved a pattern of continuing verbal abuse associated with alcohol abuse. In the instant case, the plaintiff’s credible testimony was corroborated by both children that the defendant has a 12-year history of abusing alcohol which resulted in continuous conduct that was harmful to the well-being of the entire family. However, other than the destruction of his relationships with his children and wife, the isolated acts attributed to the defendant in a 31-year marriage are of marginal significance. But in the context of defendant’s refusal to address his severe alcohol *616 problem for the past 12 years, his admitted family-destroying behavior is neither mere incompatibility nor “a vague claim of a course of conduct involving excessive drinking” (see, Murphy v Murphy, 257 AD2d 798). It is continuously serious misconduct constituting cruel and inhuman treatment (see, Brady v Brady, 64 NY2d 339; Hessen v Hessen, 33 NY2d 406).
Since no spouse should have to suffer the constant oppression associated with living with an unceasingly excessive alcohol abuser, plaintiff’s medical testimony, although not particularly compelling, was sufficient to establish that the defendant’s course of conduct was harmful to the plaintiff’s physical and mental health (see, Gascon v Gascon, 187 AD2d 955). As a result, it is unsafe and improper for the plaintiff to cohabit with the defendant. The plaintiff is hereby granted a divorce from the defendant on the ground of cruel and inhuman treatment.